(Hamilton Co. O., Court of Common Pleas.)

PEPPARD v. THE CITY OF CINCINNATI.

When a suit is brought by a taxpayer under sections 1777, 1778 and 1779, Revised Statutes, to restrain the illegal expenditure of money of a municipal corporation, and, upon hearing, the court find that the allegations in the petition are well founded, and are sufficient in law to obtain the relief sought, it is immaterial what motive actuated the plaintiff in bringing the suit, and the court, in giving judgment, may allow him his costs, including a reasonable compensation to his attorney.

---

HOLLISTER, J.

Charles A. Tooker was appointed building inspector for the city of Cincinnati in 1892 for two years and until his successors was elected and qualified, and was confirmed in his office

by the board of legislation. He was re-appointed in 1896, but the appointment was not confirmed. The appointment was made by virtue of the provisions of section 2575—53 Bates' Revised Statutes.

On May 2nd, 1898, ·the mayor of Cincinnati appointed Frank Heller to succeed Mr. Tooker, but the appointment was not confirmed. Counsel agree that an appointment of this kind has no validity unless confirmed by the board of legislation.

On the 16th day of May the board requested the corporation counsel to institute proceedings to test the constitutionality of the act under which the appointments were made; accordingly an action in *quo warranto* was instituted at the instance of the corporation counsel in the circuit court against Mr. Tooker. On the same day the board authorized Mr. Tooker to retain counsel in his defense, and· provided for an appropriation therefor. Mr. Tooker employed counsel, Mr. Theodore Horstman, and continued to draw his salary; his subordinates also were paid as they were before the suit was brought. Mr. Heller, believing, (whether rightly or not is not necessary for the court to say) that the suit would not proceed to an early hearing, consulted Mr. Heitenstein, his counsel, who advised him that the same question could be decided in an action against the proper city officials to restrain the payment of further salaries to Mr. Tooker and to his assistants.

On June 9th, the day after the city auditor was advised by the corporation counsel that he could, while the *quo warranto* suit was pending, with safety draw warrants for the salary of Mr. Tooker and for the salaries of his subordinats, this action was brought by Lawrence Peppard, a tax-payer, in behalf of the corporation, the corporation counsel having refused to institute the same. Mr. Peppard's counsel of record was Mr. M. L. Galvin, but it is agreed that Mr. Hertenstein was the sole counsel, and that he alone performed all of the legal services rendered in the case for the plaintiff.

Application was at once made to a judge of this court for an order temporarily restraining the payment of further salaries to Mr. Tooker and to his subordinates. The court declined to entertain the application, but directed that no further salary be paid to Mr. Tooker, but that his subordinates, however, should receive their salaries. Thereupon the subordinates drew on account of salaries between June 10th and July 15th inclusive $946.50. · Plaintiff was unable to prevent this payment because the order refusing to grant a preliminary injunction could not be appealed from. The case came on·for hearing on further motion for a temporary restraining order July 21st. The court, believing that the question would soon be decided in the proceedings in the circuit court, and assuming the law to be constitutional, held (Court Index, vol. 6, No. 245) that Mr. Tooker was both *de jure* and *de facto* inspector, and declined to permit the writ to issue. At once the corporation counsel advised the city auditor that Mr. Tooker's salary might be paid. On that day Mr. Tooker drew salary in the sum of $346.20.

The next day, July 22nd, the act in question was held by the circuit court in the *quo warranto* proceedings to be in contravention of the constitution, and Mr. Tooker was ousted of his office; and on that day he and his subordinates drew $215.45 in salaries.

The plaintiff in this action was entitled to the temporary restraining order sought by him. If it had been granted the city would have saved as the direct result of the action the sum of $1508.15.

On July 23rd the city and its auditor and its treasurer filed their answer in this cause. They did not allege that the act had been held to be unconstitutional the day before, but averred that Mr. Tooker was appointed and confirmed in 1892, that since that time there had been no one duly appointed and qualified, and that Mr. Tooker had held the office continually since that time, "and now holds said office."

On July 28th the plaintiff filed a motion for judgment on the pleadings.

There was, and, of course, could be, no defense. Under these circumstances the entering of the judgment is merely perfunctory. It is but shutting the cage door after the bird has flown. The real substance of the motion is the request of counsel for the plaintiff for an allowance of fees to him for his services in the case to be taxed as a part of the costs.

The right to award counsel fees as a part of the costs in a proper case is found in section 1779 of the statutes which provides:

"If the court hearing such case is satisfied that such taxpayer had good cause to believe that his allegations were well founded, or if the same is sufficient in law, it shall make such order as the equity and justice of the case demands; and in such case the taxpayer shall be allowed his costs, including a reasonable compensation to his attorney."

That plaintiff's action meets the requirements of this law is conceded, but the right to an allowance for an attorney's fees is challenged on the ground that the action was not brought in good faith.

It is claimed that Mr. Peppard was a mere cover for Mr. Heller, whose desire to succeed Mr. Tooker was the impelling force which brought about the suit; that the object of the action was not for the purpose of bringing about a result advantageous to the public, but to subserve Mr. Heller's private interests only. And it is shown that before the suit was brought Mr. Heller agreed with Mr. Hertenstein that if the result of the suit was not such as to justify an allowance by the court of fees for plaintiff's attorney, he would pay the attorney himself. It does not appear that Mr. Peppard was a party to this agreement or that he was aware of its existence, but that he was advised of it there can scarcely be doubt.

That the object of sections 1777 and 1778, under which plaintiff brought his suit, is not to subserve personal interests or to protect individual rights, but is solely for the protection of the interests of a municipal corporation, this court must consider as set-

tled. Hensley v. City of Hamilton, 3 C. C. Rep., 201; Knorr v. Miller, 5 C. C. Rep., 609; Sloan v. Railway Company, 7 C. C. Rep., 81. Yet in two cases in that court language is used which seems to give importance to the fact of the existence of a pecuniary interest in the plaintiff as a taxpayer, together with all other taxpayers whom he represents, in cases in which the object of the action is to restrain the expenditure of public money. In Buning v. Railway Co., 1 C. C. Rep., 323, the plaintiff, a taxpayer, suing under the statues referred to above, sought to restrain the defendant from operating a certain railway extension. Relief was denied him on the sole ground that the petition did not aver and the evidence did not show that expense would be put on him by taxation or otherwise. In Simmons v. City of Toledo, 5 C. C. Rep., 124, the plaintiff was a taxpayer suing to enjoin proceedings under certain ordinances granting rights to construct an electric railway in the streets of the city of Toledo. The case narrowed down to the consideration of two competitive bids for the work, and the court held that neither the plaintiff as a mere taxpayer, nor the public, had any interest in the contest between the bidders excepting only in the question which of them was the lower bidder. The court say at page 140:

"We are disposed to think that different rules would apply to such a case as this than would obtain if the matter regarded the expendiure of public money. * * * This plaintiff is not an owner of property on any of the streets in question. He simply intervenes as a taxpayer and as representing the general public of the city, and must show that he and those whom he thus represents are injured"

Assuming that Mr. Peppard permitted his name to be used merely to assist Mr. Heller in his purposes; yet he had personally a pecuniary interest at stake. And when the suit was actually brought every taxpayer in the city, and the corporation itself, had an interest in its success, an interest measured merely by dollars and cents.

What difference does it make to the public in whose behalf the suit was brought whether Mr. Peppard's initial impulse was to benefit Heller or not? The issue being the illegal expenditure of public money, Mr. Peppard and every taxpayer had a legal right to institute an inquiry in behalf of all the citizens represented by the corporation, and save to the corporation money about to be illegally extracted from its treasury. And it may safely be asserted if it appeared in such case that the money ought to be saved to the corporation, that no court would dismiss the suit and permit a wrongful act to be done merely because the plaintiff would not have brought the suit had he not been instigated thereto by a desire to serve the personal designs of a friend. This right to thus save public money conferred by the statute on a taxpayer as such, does not partake of any common or correlative attributes. The right is his, representing himself and the public in the corporation in whose behalf the suit is brought, and when once brought into exercise by him by bringing an action, such proceeding is exclusive of any other action by any other taxpayer seeking the same object.

In this view of the case, the court is of opinion that the motive which actuates the taxpayer in bringing such suit is entirely immaterial.

Nor is this conclusion in conflict with Gallagher v. Johnson, 31 W. L. B., 24, on which the defendants rely. That was a case brought by a taxpayer to enjoin the letting of a contract for the construction of a street railway in which it appeared that the taxpayer had brought the action at the request of a person or corporation whose interests were inimical to the corporation in whose behalf the suit was brought. Of course the petition was dismissed, and ought to have been, even without the further fact being shown that the taxpayer had no interest in the controversy and had been indemnified against costs and expenses. The language of Judge Wilson, who decided that case, found on page 26 of that report is entirely in line with the foregoing, for one of the bases of his judgment was that the plaintiff, the taxpayer, had no personal or pecuniary interest in the controversy.

But would the success of this suit have been of any benefit to Mr. Heller? The ultimate decision sought for would have been as fatal to him as to Mr. Tooker. Nor could he have reaped any advantage from an order temporarily restraining Mr. Tooker from drawing his salary, for not having been confirmed himself, the usufructs of office would have been denied to him as well. His position was that if he could not be confirmed in his office and get the salary Mr. Tooker at least should not have it; the result of which was that the sole beneficiary of the controversy was the public. Mr. Peppard's desire to help Mr. Heller, and Mr. Heller's earnest wish to deprive Mr. Tooker and his subordinates of their salaries, could not possibly be of any advantage to Mr. Heller; but, if gratified, would only be carrying out the very purpose for which the statutes giving Mr. Peppard the right to sue were enacted.

For these reasons Mr. Peppard is entitled to have his counsel fees taxed as part of the costs. It is not denied that if Mr. Hertenstein is entitled to any fee one hundred and fifty dollars would be reasonable.

Judgment for the plaintiff with his costs and allowance of counsel fees.

Fred Hertenstein, for Plaintiff.

Wade G. Ellis, Asst. Corp. Coun., Contra.